UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERTO FLORES,

           Petitioner,

vs.

UNITED STATES OF AMERICA

           Respondent.
                                    /

Civ. No. 13-14135
Crim. No. 03-80359

District Judge Gerald E. Rosen
Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Before the Court is Petitioner Alberto Flores' Motion to Vacate Sentence under 28 U.S.C. §2255 [Docket #207], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons that follow, I recommend that the Motion be DENIED.

    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner was convicted in a bench trial before the Honorable Gerald E. Rosen of a single account of conspiracy to distribute with intent to import and to import pseudoephedrine from Canada into the United States, in violation of 21 U.S.C. §§ 959(a)(1), 960(d)(3), and 963. On February 9, 2011, Petitioner was sentenced to a term of 186 months imprisonment, to run concurrently with a separate 78-month sentence imposed in the Eastern District of Kentucky for conspiracy to traffic/possess pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C.

§ § 841(c)(2) and 846. He appealed to the Sixth Circuit, which affirmed his conviction and sentence on June 29, 2012 [Doc. #204].

In his Findings of Fact and Conclusions of Law [Doc. #186], Judge Rosen found that "[t]he testimony at trial established the existence of an agreement among co-defendants Shahin Judeh, Ali Salem, Nasir Baste, Mohammed Awad, and others to obtain supplies of pseudoephedrine from Canada, transport those supplies into the United States, and sell them for cash or drugs." *Id*. ¶ 76. The evidence showed that in 2003, Petitioner met with some of the co-conspirators in Chicago, travelled to Michigan, and then went to Canada to purchase pseudoephedrine to import into the United States. The indictment did not charge, and the evidence did not show any activity that took place in Kentucky.

In his appeal to the Sixth Circuit, Petitioner raised only a single issue, challenging the trial court's decision to call and question its own witness during trial. The Sixth Circuit rejected Petitioner's argument, and affirmed his conviction.

Submitted with Petitioner's motion [Doc. #207] as Appendix 1 is his presentence report from the Kentucky case. The indictment in that case charged the Petitioner, along with co-defendants Hussein Wazwaz, Abdelrahman Jadallah, Khaled Bader, and Cecile Awad, with conspiracy to traffic/possess pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. § § 841(c)(2) and 846, and based on activities in 2002 and 2003.

In the present motion, Petitioner claims that his attorney rendered constitutionally ineffective representation based on (1) his failure to challenge the prosecution on double

jeopardy grounds; (2) his failure to challenge prosecutorial and judicial misconduct; (3) his failure to challenge the three points given under the Criminal History section of the Sentencing Guidelines, based on the Kentucky case; and (4) the failure to challenge the imposition of a sentence based on uncharged elements.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the United States Constitution. "[A] defendant must show a fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir.1998) (internal quotation omitted); *Gall v. United States,* 21 F.3d 107, 109 (6th Cir.1994). To prevail under § 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the verdict. *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003). Congress and the Supreme Court have set the bar high for § 2255 petitioners. *See United States v. Frady,* 456 U.S. 152, 166 (1982) ("[T]o obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal").

Where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer

prejudice if unable to proceed, or (2) he is actually innocent.[1] *Bousley v. United States,* 523 U.S. 614, 622 (1998). "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States,* 334 F.3d 520, 527–528 (6th Cir.2003), *citing United States v. Frady,* 456 U.S. at 167–68.

### III. DISCUSSION

The underlying substantive claims that Petitioner has raised–violation of double jeopardy and trial and sentencing errors–are matters that flow from the record, and that could have been, but were not raised at either the district court proceedings or in his appeal. These issues have therefore been forfeited, and cannot be considered in a § 2255 motion without a showing of cause and prejudice. *United States v. Frady* described this standard as follows:

> "Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id*. 456 U.S. 152, 167-168 (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)).

Petitioner contends that the "cause" prong of the test is satisfied because his attorney at both trial and on appeal was constitutionally ineffective. The Sixth Amendment guarantees the accused in a criminal prosecution the right to the effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 (1984). *Strickland* sets

---

[1] Petitioner does not argue that he is actually innocent of the charged offense.

forth a two-part test for assessing claims of ineffective assistance. First, did the attorney make errors "so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment," 466 U.S. at 687. To establish deficient performance under this prong of *Strickland,* the defendant must show that his attorney's representation "fell below an objective standard of reasonableness." *Id.,* at 688.). The second prong of Strickland examines whether the defendant was prejudiced by counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Given that the procedural default standard of *Frady/Sykes* and the ineffective assistance standard of *Strickland* both assess "prejudice," it is appropriate to proceed directly to a discussion of the merits of Petitioner's underlying issues, which will be dispositive. "In applying this dual standard to the [§ 2255] case before us, we find it unnecessary to determine whether [petitioner] has shown cause, because we are confident he suffered no actual prejudice of a degree sufficient to justify collateral relief...." *Frady* at 168.

### A. Double Jeopardy

The Fifth Amendment ensures that no "person be subject for the same offence to be twice put in jeopardy of life or limb." Double jeopardy protection "applies both to successive punishments and to successive prosecutions for the same criminal offense."

*United States v. Dixon*, 509 U.S. 688, 696 (1993); *see also North Carolina v. Pearce,* 395 U.S. 711 (1969). In this case, Petitioner claims that he was subjected to a successive prosecution for the same offense, arguing that his prior conviction in the Eastern District of Kentucky for conspiracy to traffic/possess pseudoephedrine with intent to manufacture methamphetamine barred his conviction in this Court for conspiracy to distribute with intent to import pseudoephedrine because they were simply separate components of the same conspiracy, and therefore constituted the "same offense."

In *Blockburger v. United States,* 284 U.S. 299, 304 (1932), the Supreme Court held that where the same act or transaction constitutes a violation of two separate statutory provisions, the critical inquiry under the Double Jeopardy Clause is whether each provision requires proof of an additional fact that the other does not. Applying the *Blockburger* test, the Court in *Albernaz v. United States*, 450 U.S. 333 (1981), confirmed that conspiracy to distribute with intent to import controlled substances is a separate offense from conspiracy to possess with intent to manufacture:

> "As has been previously discussed, conspiracy to import marihuana in violation of § 963 and conspiracy to distribute marihuana in violation of § 846 clearly meet the *Blockburger* standard. It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause. See, *e. g., Harris v. United States*, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). This is true even though the "single transaction" is an agreement or conspiracy. *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946)." *Id.* at 344, fn. 3.

Petitioner protests that *Blockburger* applies to successive *punishments*, while he is

claiming a successive *prosecution*. Essentially, he argues that because the conduct in this case and the conduct in the Kentucky case were merely separate aspects of the same grand conspiracy, they could have been joined in a single prosecution, but it violated the Double Jeopardy Clause to sever them into separate cases. The Supreme Court's decision in *United States v. Dixon* is fatal to that argument.

It is true that in *Grady v. Corbin,* 495 U.S. 508 (1990), the Supreme Court adopted a "same conduct" test for double jeopardy claims based on successive prosecutions. Three years later in *Dixon*, however, the Court overruled *Grady*, "making clear that the only inquiry was whether the offenses satisfied the *Blockburger* same elements test and expressly disavowing any 'same conduct' or 'same transaction' test." *Timmons v. Rapelje*, 2013 WL 6048995, *11 (E.D.Mich. 2013)(Roberts, J.). *See also Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000) ("In determining whether a defendant has been subjected to successive prosecutions for the same offense, this Court applies the 'same elements' test originally set forth in *Blockburger v. United States*")(citing *Dixon*).[2]

In *Rashad v. Burt*, 108 F.3d 677 (6th Cir.1997), the Sixth Circuit found a double jeopardy/successive prosecution violation where the defendant was tried for possession

---

[2] In *Murr*, the defendant was charged with substantive federal controlled substances violations in both Kentucky and Tennessee. Noting that "Petitioner's violation of federal drug laws in Kentucky were distinct from his criminal acts in Tennessee," the Sixth Circuit rejected his successive prosecution argument, agreeing with the lower court that " the two indictments charge different violations on different days, in different places, which involve different people." *Id*. 901-902. So too in the present case.

with intent to deliver cocaine that was found in his house, and tried separately for possession with intent to deliver cocaine that was found a week after the search of his house, during an inventory search of his car. The Court found that "the relevant fact situation involves Rashad's possession of a total of several kilograms of cocaine at the same time and place, and with the single unifying intent of distribution. Thus, Rashad's possession of cocaine in his home and in his automobile constituted a single transaction." *Id*., 680-81. In the present case, by contrast, Petitioner was charged not just with separate conduct, but with separate offenses having distinct elements, bringing it within the purview of *Blockburger* and *Dixon*. I also note that in *United States v. Forman*, 180 F.3d 766, 770 (6th Cir. 1999), the Sixth Circuit, recognizing the primacy of the Supreme Court's decision in *Dixon*, limited the application of *Rashad* to its own unique facts:

> "Although some of the language in *Rashad* would seem to endorse the 'same evidence' test outside of situations where the concern is whether the prosecution has impermissibly divided the defendant's conduct so that it may bring repeated prosecutions under the same statute, it is clear from the *Rashad* opinion that the referenced language is to be limited in its application to circumstances such as were present in that case. We cannot, of course, overrule *Dixon* and *Rashad* is likewise limited by that holding. In fact, the *Rashad* court failed even to mention *Dixon,* a clear indication that the court recognized that the two cases involved different issues. *See United States v. Williams,* 155 F.3d 418, 420–21 (4th Cir.1998) (rejecting *Rashad* as inconsistent with *Dixon* and other Supreme Court decisions)."

As the government notes in its response, Petitioner's trial counsel successfully argued for a sentence significantly lower than the advisory guidelines range that the Probation Department calculated, and for a sentence concurrent with the Kentucky sentence. Counsel had no basis to assert a double jeopardy violation, and it would have

been futile to do so under *Dixon*. Because Petitioner has not met the prejudice prong of either *Strickland* or *Frady*, he is not entitled to relief under § 2255.

### B. Miscalculation of the Sentencing Guidelines

Petitioner's argument here is premised on the theory that the use of his Kentucky conviction in calculating his criminal history score was improper because it was, in effect, part of the "same offense" as that for which he was being sentenced. For the reasons discussed in the preceding section, that argument is without merit.

### C. Prosecutorial and Judicial Conduct

Petitioner claims that during a break in the trial proceedings, and following the testimony of Shahin Judeh, he saw then-Assistant United States Attorney Barbara McQuade and two other individuals enter Judge Rosen's chambers. He alleges that he heard Judge Rosen say that he had just heard Judeh's testimony, and at one point heard Judge Rosen say, "No," but he did not hear any other conversation.

At the time of the trial, Ms. McQuade was not the United States Attorney, she was an Assistant United States Attorney. She was not involved in the Petitioner's case. It is not uncommon for attorneys, including prosecutors and defense attorneys, to meet with judges in their chambers for case-related or other matters, and here, Plaintiff states that Ms. McQuade entered Judge Rosen's chambers with two other individuals. Opposing counsel on another case, perhaps? He does not claim that the AUSA in *his* case was involved in any *ex parte* communications with the judge. Any claim of prejudice flowing from the judge's conversation with attorneys who were not involved in Petitioner's case

is purely speculative. *See Sturm v. Superintendent of Indian River Juvenile Correctional Facility,* 514 F.App'x 618, 626–627 (6th Cir. 2013) (holding that argument amounting only to "speculation, not a 'reasonable probability' of a different outcome" was insufficient to show prejudice) (citing *Harrington v. Richter,* 562 U.S. 86 (2011) ("The likelihood of a different result must be substantial, not just conceivable.")).

### D.   Uncharged Conduct Considered at Sentencing

Petitioner claims that his sentencing guidelines range was improperly enhanced based on his leadership role in the offense. However, ¶ 39 of the presentence report, appended to his petition, shows that he received no adjustment, upward or downward, for his role in the offense. And at sentencing, while the judge declined to apply a downward adjustment for role in the offense, neither did he apply an upward adjustment for leadership. In fact, the judge stated that he found "Mr. Flores' involvement in this conspiracy as opportunistic and a very limited, not in the sense of quantity, but limited in terms of the actual deal that he was doing." *Sentencing Transcript* [Doc. #199], p. 18.

### IV.   CONCLUSION

Petitioner failed to raise any of these issues in his direct appeal, and has thus procedurally defaulted them for purposes of § 2255. The underlying substantive issues he has raised in this petition, including the double jeopardy issue, are without merit, and he has therefore not shown that he was prejudiced by his attorney's failure to raise them either at trial or on appeal. Therefore, I recommend that his petition [Doc. #207] be DENIED.

-10-

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

/s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: August 21, 2015

### Certificate of Service

I certify that a copy of this order was served upon parties of record on August 21, 2015 via electronic or postal mail.

/s/A. Chubb
CASE MANAGER